NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

> **FILED**
>
> JAMES J. WALDRON, CLERK
>
> [February 2, 2012]
>
> U.S. BANKRUPTCY COURT
> CAMDEN, N.J
> BY: /s/ Elizabeth Grassia, Deputy

|  |  |
|---|---|
| IN RE: | |
| RAYMOND S. FRIEDMAN, d/b/a Bonanza Army Navy Store, | CHAPTER 7 |
| Debtor. | |
|  | CASE NO. 09-25781 (GMB) |
| JOSEPH D. MARCHAND, Chapter 7 Trustee, | |
| Plaintiff, | ADVERSARY NO. 10-2591 (GMB) |
| v. | |
| RAYMOND S. FRIEDMAN, | |
|  | MEMORANDUM OPINION |
| Defendant. | |

APPEARANCES

Joseph D. Marchand, Esquire
Chapter 7 Trustee
117-119 West Broad Street
P.O. Box 298
Bridgeton, NJ  08302

Mr. Raymond S. Friedman
c/o Dixon
130C West Broadway
Bel-Air, MD  21014

David A. Kasen, Esquire
KASEN & KASEN
1874 E. Marlton Pike
Suite 3
Cherry Hill, NJ  08003
Counsel for the Debtor

I. **BACKGROUND**

Before the Court is an adversary proceeding initiated by Joseph D. Marchand, Esq., Chapter 7 Trustee (the "Trustee" or "Plaintiff") objecting to the discharge of the debts of the debtor, Raymond S. Friedman (the "Debtor"), under §§727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A) of the Bankruptcy Code. The Trustee filed his adversary complaint on December 16, 2011 and the Debtor answered on January 18, 2011. The Trustee filed a Motion for Summary Judgment on May 10, 2011 which was denied by this Court on June 13, 2011. This Court held a one-day trial at which the Debtor appeared *pro se*. With respect to the relief sought under section 727(a)(2), the Trustee alleges that the Debtor failed to list certain transactions on his Statement of Financial Affairs and also failed to disclose the related debts/assets on his Bankruptcy Petition in an effort to hinder delay or defraud a creditor or an officer of the estate. With respect to the relief sought under section 727(a)(4), the Trustee alleges that the Debtor knowingly and fraudulently made a false oath or account when he failed to list certain transactions, assets and/or debts on his Bankruptcy Petition. While the Debtor conceded at trial that he may have made mis-disclosures or non-disclosures in his bankruptcy case, they were inadvertent and were not done with the intent to hinder, delay, or defraud any party.

This adversary proceeding is a core proceeding and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(b) and 1334(b). The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

The relevant facts are not in dispute. The Debtor was the sole proprietor of a store known as Bonanza Army Navy Store; and is currently the owner of the business Army Navy Now Inc.[1] The Debtor was previously married to an individual named Christine M. Friedman. On August 18, 2005 a Final Judgment of Divorce with Stipulations (the "2005 Divorce Decree") was docketed in the Superior Court of New Jersey Chancery Division, Family Part Gloucester County, Docket No. FM-08-473-05. Among other Stipulations within the 2005 Divorce Decree was the stipulation that "[t]he defendant shall maintain on his life insurance in the sum of not less than $500,000 naming the plaintiff as the Trustee with the children as the beneficiaries. Proof of the maintenance of this policy shall be provided by the defendant directly to the plaintiff

---

[1] The Debtor listed in his Schedule B that the current value of his interest in Bonanza Army Navy Store and Army Navy Now, Inc., was $100.00 each. The store known as Bonanza Army Navy Store is no longer doing business and the Army Navy Now, Inc., store is allegedly currently conducting business in Maryland.

2

within thirty days …[and] [h]e shall thereafter, on an annual basis provide this proof directly to the plaintiff." See Debtor's Exhibit D-8. The 2005 Divorce Decree further provides that

> The parties maintain life insurance cash surrender value. Husband has listed the life insurance cash surrender value in his Case Information Statement as follows:
>
> A.   Ray's policy - $73,209 (11/04)
>
> B.   Ben's policy - $2,154 (11/04)
>
> C.   Joey's policy - $2,825 (11/04)
>
> D.   Chris's policy - $18,098 (11/04)
>
> On an annual basis they shall exchange proofs of the maintenance of those life insurance cash surrender values to ensure that there have been no withdrawals or hypothecation of those accounts. Each of the parties shall maintain the accounts for their children. There shall be no withdrawals from those accounts other than to satisfy costs related to the children's college education … These funds are solely for the purpose of satisfying the college expenses of Joseph and Benjamin.

See Debtor's Exhibit D-8.

After the Debtor was divorced from Christine M. Friedman, the Debtor then married Theresa Ciko-Friedman. Their marriage of approximately one and a half years came to an end when, on or about November 13, 2008, Ms. Ciko-Friedman filed a complaint for divorce against the Debtor in a case captioned Teresa Ciko-Friedman vs. Raymond S. Friedman, Superior Court of New Jersey, Burlington County, Chancery Division, Family Part, docket number FM-03-548-09.

The Debtor filed the within petition on June 18, 2009 (the "Petition Date"). A Stay Relief Motion was filed in the Debtor's bankruptcy case by Theresa Ciko-Friedman on July 6, 2009 requesting relief from the automatic stay for the limited purpose of enforcement of the state court's orders concerning certain support issues related to Theresa Ciko-Friedman and Debtor's divorce. This Court granted the Stay Relief Motion on August 4, 2009.

On July 27, 2009, the Debtor appeared with his attorney at the Section 341 Hearing where he presented testimony under oath to the Trustee. At the §341 hearing, the Debtor certified that everything was accurate and truthful in his bankruptcy petition and schedules and

statements.  The Trustee requested additional information from the Debtor on two occasions after the Section 341 Hearing and the Debtor allegedly failed to provide said documentation.  As a result thereof, on August 26, 2009, the Chapter 7 Trustee filed a Motion to Dismiss Debtor's bankruptcy petition for failure to cooperate with the Chapter 7 Trustee.  The Motion to Dismiss Debtor's bankruptcy petition was resolved by an order which provided that the Debtor was to supply the Trustee with the requested information no later than December 15, 2009.  On April 26, 2010, the Trustee again filed a Certification in support of Dismissal of Petitioner's Bankruptcy Petition on the grounds that Debtor had failed to cooperate with the Trustee in providing the requested information, to which the Debtor objected.  On June 17, 2010, the Trustee's Motion for dismissal was resolved by entry of an order which provided that the Debtor would submit certain documents to the Trustee in two weeks.  The within adversary case was thereafter initiated by the Trustee on December 16, 2010.

The Adversary Complaint dated December 16, 2010 (the "Complaint") alleges five counts under §§727(a)(2)(A),(a)(2)(B), and (a)(4)(A).  Specifically, the Trustee alleges that the Debtor, with an intent to hinder delay or defraud, transferred or concealed property of the estate after the filing of the petition, transferred or concealed property of the debtor within one year before the date of the filing of the petition, and made a knowing or fraudulent false oath or account in connection with the bankruptcy case.  The allegations primarily center on the Debtor's obtainment of substantial loans against the cash-surrender value of several Northwestern Mutual Life Insurance Policies.   The Debtor's general defense against the Trustee's claims is that, while he concedes that there are errors and/or omissions on his Schedules and Statements, such misstatements were not made with a fraudulent intent or to hinder or delay creditors or the Trustee.  Debtor principally relies upon his assertion that he believed, that as a result of the 2005 Divorce Decree, he had no interest in the life insurance policies on which he obtained loans, and therefore, he did not feel the need to disclose them or transactions related to them in his bankruptcy case.

The Trustee filed a Motion for Summary Judgment on May 10, 2011.  In response, the Debtor filed a Certification in which the Debtor stated, among other things, the following:

> At this time I am informing the courts and Joseph Marchand as to my withdrawal from any further proceedings to appeal the chapter 7 case no.

4

> 09-25781….I do declare that at no time was there intent to defraud, hinder or obstruct in any way, I accept the fact that the filing failed to meet the requirements and that the implying violation of 11 U.S.C. section 727 [sic]. I have stated my case and in respect to the Honorable Judge Gloria M. Burns that if she so inclined to support the motion for dismissal of the bankruptcy, I do not wish to continue to burden the courts nor Joseph Marchand…. Any further actions that I need to do as pertaining to the dismissal of this bankruptcy case no. 09-25781 –GMB I shall with all cooperation attend to as directed.
>
>
> Sincerely, Raymond S. Friedman

See Doc. 11, Case No. 10-02591. Finding that there were material issues of fact yet unresolved, namely with respect to the Debtor's intent regarding the transactions and misstatements made by the Debtor, this Court denied the Motion for Summary Judgment and scheduled the matter for trial to be held on December 15, 2011.

The clear and unequivocal evidence submitted by the Trustee at trial, and unchallenged by the Debtor, shows that the Debtor obtained the following loans against the cash surrender value of certain below referenced Northwestern Mutual Life Insurance Policies (the "Pre-Petition Loans" and the "Post-Petition Loans" and collectively the "Loans"):

*Pre-Petition Loans Obtained within 1-Year of Petition Date (undisclosed)*

    Policy No. *660 in the sum of $43,200 on November 30, 2008

    Policy No. *999 in the sum of $32,400 on November 30, 2008


*Post-Petition Loans Obtained by Debtor (undisclosed)*

    Policy No. *660 in the sum of $12,000 on June 19, 2009**

    Policy No. *999 in the sum of $11,000 on June 19, 2009**

    Policy No. *451 in the sum of $7,015 on June 19, 2009**

    Policy No. *660 in the sum of $300 on July 31, 2001***

    Policy No. *999 in the sum of $1,300 on July 31, 2009***

5

   Policy No. *451 in the sum of $900 on July 31, 2009***

*\*\* Note that Loan was taken just one day after the Petition Date.*
*\*\*\* Note that Loan was taken just four days after the §341 hearing*

   In addition to the aforementioned Loans, the Debtor also made the following transfers from Raymond S. Friedman d/b/a Bonanza Army Navy Store ("Bonanza") to the Army Navy Now, Inc. ("Army Navy Now"), store (the "Transfers"):

| | |
|---|---|
| November 28, 2008 | in the sum of $1000 |
| December 19, 2008 | in the sum of $4,000 |
| March 31, 2009 | in the sum of $8,877.92 |
| April 29, 2009 | in the sum of $3,341.17 |
| June 24, 2009 | in the sum of $38,365.14 |

See Plaintiff's Exhibits 2-5.

   Finally, documents submitted and entered into evidence by the Debtor show that the Debtor signed two promissory notes on March 10, 2009 and August 25, 2009 respectively (collectively the "Promissory Notes"); each setting forth the terms and conditions of a purported agreement by which Raymond Friedman agreed to repay Christine Manel (formerly Christine Friedman) amounts Debtor borrowed from the Northwestern Mutual Life Insurance Policies and an Aviva Annuity. The Promissory Notes were drafted by Debtor and are not executed or acknowledged in any way by the promisee, Christine Manel. The first promissory note dated March 10, 2009 and signed solely by Raymond Friedman as borrower states in pertinent part:

> I … Raymond S. Friedman acknowledge then [sic] loan amount of
> $75,000 received from Northwestern Mutual Life Insurance, that
> under the divorce agreement is money for Joseph Thomas
> Friedman and Benjamin Paul Friedman…
>
> Repayment of the loan to be determined and not to surpass 4 years from
> this date to start with payments to them…Interest is to be set at 1.75% rate
> annually and compounded till the full amount is satisfied.

See Defendant's Exhibit 3. The Debtor also entered into a purported "Addendum to the North Western Life Insurance Loans", whereby he acknowledges that in 2009 "additional loans were drawn again the life insurance policies …. [and] [t]hese amounts are to be added to that

6

agreement and the same terms apply." See Debtor's Exhibit 4.  The Addendum goes on to state that "[d]uring the months of June and July 2009 the amounts of $24,600 and $7,915 were barrowed [sic] [and] New principle balance is $107,515." See Debtor's Exhibit 4.

The second promissory note referenced above dated June 15, 2009 acknowledges that the Debtor borrowed "$38,365.14 from Christine Manel…[with a] promise to pay back the principle plus interest to be determined…" See Debtor's Exhibit 5.  The note further provides that there will be a "payment plan to be determined after a period of stability as defined by closure on the divorce hearings and bankruptcy outcome with [Debtor's] income taken into account." See Debtor's Exhibit 5.  Again, the second promissory note was also not signed or acknowledged in any way by Christine Manel, the promisee.

None of the aforesaid transactions were listed on the Debtor's Statement of Financial Affairs.  See Petition, Docket No. 1,2,8.  The Petition failed to list any monies Debtor owed to either Northwestern Mutual Life Insurance Company on account of the aforementioned Loans on Schedule D or F.  (See Petition, Docket Nos. 1,3, & 8).  Petitioner did not list remaining cash surrender value, if any, of the Northwestern Mutual Life Insurance Company policies on his Schedule B.  Debtor did not list Christine Manel or his sons as creditors in his petition, nor did Debtor disclose the transactions he allegedly entered into with Christine Manel just prior to filing his petition.  Debtor did not list any transfers from Bonanza to Army Navy Now in his Statement of Financial Affairs.

## II.    DISCUSSION

It is well-settled law that a denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor.  See Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge… is an extreme step and should not be taken lightly").  However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor.  See Congress Talcott Corp. v. Sicari (In re Sicari), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).  "Thus, where a debtor has been dishonest in his dealings with the court or his creditors, it may be appropriate to deny his discharge, notwithstanding that an underlying goal of federal bankruptcy law is to provide a debtor with a fresh start."  In re Spitko, 357 B.R. 272, 298 (Bankr. E.D.Pa. 2006).  The Plaintiff bears the burden of proof establishing

7

the evidence of each of the elements of section 727 by a preponderance of the evidence. See, e.g., In re Dolata, 306 B.R. 97, 146 (Bankr. W.D.Pa. 2004); See also Fed. R. Bankr. 4005.

**§727(a)(2)(A) - (B)**

Section 727(a)(2)(A)-(B) of the Bankruptcy Code provides that a debtor will not be granted a discharge where

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate … has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, within one year before the date of the filing of the petition; or (B)property of the estate, after the date of the filing of the petition…

11 U.S.C. §727(a)(2)(A)-(B). To prevail on a §727(A)(2)(A) cause of action, a party must prove the following by a preponderance of the evidence: (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and subjective intent occurred within one year before the petition date. Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). The elements of a § 727(a)(2)(B) claim differ from § 727(a)(2)(A) only to the extent that the post-petition period is the relevant time period; the need to demonstrate the subjective intent to transfer or conceal property of the estate remains the same. See In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005).

With respect to the intent requirement, because a debtor is unlikely to admit directly that his or her actions were motivated by fraud, intent may be inferred using circumstantial evidence or inferences drawn from a course of conduct. *E.g.*, Spitko, 357 B.R. at 301. In the present case, the Trustee argues that the Debtor's Pre-Petition Loans within one year of the petition date were undertaken and concealed by the Debtor with an intent to hinder, delay or defraud creditors or the representative of the Debtor's estate. This Court agrees. The Debtor argues that the Pre-Petition Loans taken against the insurance policies were not disclosed because of a misconception by Debtor that, because the insurance policies were designated for the benefit of his children in the 2005 Divorce Decree, the Debtor did not own any interest in said policies. The Court finds the Debtor's position unbelievable and untenable. Indeed, the Debtor concedes that within one year of the Petition Date, and in some instances within weeks/days of the Petition

8

Date, the Debtor obtained funds by borrowing from the Northwestern Mutual Life Insurance Policies without the assistance of Christine Manel. Furthermore, the terms of the 2005 Divorce Decree do not divest Debtor of his ownership interest in the life insurance policies, but rather clearly states that "[t]he parties [shall]maintain life insurance cash surrender value…[and] [o]n an annual basis they shall exchange proofs of the maintenance of those life insurance cash surrender values to ensure that there have been no withdrawals or hypothecation of those accounts." See. Debtor's Exhibit D-8. Thus, it is clear from the terms of the 2005 Divorce Decree that the Debtor was to maintain his respective life insurance policies; not that the Debtor was divested of any interest he had in the life insurance policies.

In addition, despite signing the Promissory Notes dated March 10, 2009 and June 15, 2009 in favor of Joseph Thomas Friedman & Benjamin Paul Friedman, and Christine Manel respectively, the Debtor failed to list said parties as creditors in his bankruptcy petition. As evidenced in the Promissory Notes submitted into evidence by the Debtor, he admits that he received a total of $107,515 in loans on the Northwestern Mutual Life Insurance Policies in 2009 and $38,365.14 from the Aviva Annuity in 2009.[2] These transfers were also not listed in the Debtor's bankruptcy petition.

Thus, the Debtor received well in excess of $140,000 in 2009, both within the one year time period preceding the Petition Date and immediately following the Petition Date. The Debtor failed to disclose anything related to said transactions on his Petition. Indeed, just two days prior to filing his bankruptcy petition, Debtor received a total of $38,365.14 from an Aviva Annuity and entered into an alleged agreement with his ex-wife to repay that sum with interest. If it was truly the Debtor's belief that the life insurance policies were in fact solely the property of his ex-wife, then it seems axiomatic that once the Debtor borrowed on their cash surrender value with an agreement to repay his children and/or his wife, then at least at that point they were subject to disclosure in his bankruptcy schedules and statements. The credibility of Debtor's account of

---

[2] The Debtor contends, and the evidence shows, that pursuant to the QDRO (in this case the 2005 Divorce Decree), the Aviva Life Insurance Annuity for $37,864.22 was intended to be transferred to Christine Manel as part of the settlement. However, it appears from the documents submitted that said transfer was never effectuated. Therefore, the Debtor posits, he was the party that liquidated the Aviva Life Insurance Annuity and because he was in need of financial assistance at the time, he simply agreed to repay Christina Manel back via a the promissory note dated June 15, 2009. It is important to note that the Debtor does not contend that he liquidated the Aviva Life Insurance Annuity and simply handed over the money to Christina Manel, rather he liquidated the account and kept all of the funds and in exchange gave a promissory note to Christina Manel.

the situation is further undercut by the fact that the Debtor failed to list Christine Manel or his sons as creditors in his bankruptcy petition. While he may have believed that any debt owed to them would be non-dischargeable in bankruptcy, such a belief would not transform the nature of their status as creditors of the Debtor's bankruptcy estate.

In addition to the monies received by the Debtor on account of the life insurance policies, the Debtor also engaged in significant transfers from Bonanza, a business over which the Debtor was a sole proprietor, to Army Navy Now, Inc., a company wholly owned by the Debtor and located in Maryland. The Debtor contends that these transfers were supposed to be considered as "loans" from Richard S. Friedman d/b/a Bonanza to Army Navy Now, Inc., however, the Debtor was unable to provide records memorializing such a characterization. This assertion also pushes the bounds of credulity. If one were to accept the Debtor's contention that these were "loans" and not transfers intended to hinder, delay or defraud, then the obvious question is why said transfers were not included as receivables on Debtor's Schedules and Statements. The Debtor transferred over $14,000 to Army Navy Now within the one year preceding the Petition Date. Said transfers are undisclosed on his bankruptcy petition schedules and statements.

The facts and circumstances surrounding the transactions at issue can lead to no other conclusion but that the Debtor engaged in said conduct with an intent to hinder, delay or defraud a creditor or an officer of the estate. The Debtor's proffered explanations strain credulity and in light of the evidence produced at trial, simply have no basis in fact or law. While this basis alone is sufficient to deny the Debtor's discharge, for the sake of completeness this Court will also determine whether the Debtor should be denied his discharge pursuant to §727(a)(4).

### §727(a)(4)

To deny a discharge under §727(a)(4)(A) of the Bankruptcy Code, a plaintiff must establish by a preponderance of evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. See, e.g., Spitko, 357 B.R. at 312. See also, Scimeca v. Umanoff, 169 B.R. 536, 541 (D.N.J. 1993). The purpose of this section is to "encourage debtors to completely and candidly disclose their assets, income, expenses, and liabilities so that creditors have adequate information

about the debtor's estate." In re Bielan, Miklos & Makrogiannis, 2010 Bankr. LEXIS 1320 (Bankr. D.N.J. April 21, 2010).  Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. §1746.[3]  Fed. R. Bankr. P. 1008.  An "oath" under §727(a)(4)(A) of the Bankruptcy Code, therefore, includes the unsworn declarations contained in the Petition.  See Moore v. Strickland (In re Strickland), 350 B.R. 158, 163 (Bankr. D.Del. 2006).  Statements made when one is testifying at a proceeding such as a §341 hearing is also under oath.  See Fed. R. Civ. P. 30(b)(5)(A).  Office of U.S. Tr. V. Zimmerman (In re Zimmerman), 320 B.R. 800, 807 (Bankr. M.D.Pa. 2005) (finding that debtor was under oath when he testified at the §341 meeting).

In the present case, there is no dispute that the statements made by the Debtor in his Petition and at his §341 hearing were under oath.  Accordingly, the first element required to deny a discharge under §727(a)(2)(A) is met.

Next, this Court must determine whether the debtor made a statement under oath that was false.  A false oath includes "(1) false statements or omissions in a debtor's Petition and (2) false statements by a debtor at examinations held during the course of the bankruptcy proceedings." E.g., Scimeca, 169 B.R. at 542-43;  See also Strickland, 350 B.R. at 163 (explaining that a debtor's failure to list every asset owned by debtor can constitute a false oath or account).  Here, the Debtor has failed to disclose several assets and liabilities in his Petition, including: (1) his receipt of Pre-Petition Loans from the Northwestern Life Insurance Policies totaling $75,600; (2) the existence of a Promissory Note given to his ex-wife Christine Manel in the amount of $75,000 within one year of the Petition Date; (3) the transfer of property of the Debtor from Bonanza to Army Navy Now, Inc., in the amount of $13,877.92; and (4) the existence of a remaining cash surrender value, if any, of the Northwestern Mutual Life Insurance policies. These omissions equate to "false oaths" since, in failing to disclose them, the Debtor misrepresented the nature of his estate to creditors and thus, the second element under §727(a)(4) is met.

---

[3] Section 1746 of the United States Code states that "unsworn declarations are equivalent to a verification under oath if the declarant states in writing that the information is true under penalty of perjury." 28 U.S.C. §1746(2006).

Next, this Court must determine whether the Debtor's false oaths were made knowingly and with fraudulent intent.[4] See Spitko, 357 B.R. at 312. Omissions or false statements caused by an honest mistake or inadvertence are not sufficient to deny a discharge. Spitko, 357 B.R. at 312 (citing Georges v. Solodky (In re Georges), 138 Fed. Appx. 471 (3d Cir. 2005). Thus, a debtor will only be denied his discharge under §727(a)(4) when his false oath was made both knowingly and with fraudulent intent. A statement can be made "knowingly" for the purposes of §727(a)(4) in one of three ways: where the statement is (1) known by the debtor to be false, (2) made without belief in its truth, or (3) made with reckless disregard for the truth. Spitko, 357 B.R. at 312.

Several factors are significant in determining whether a debtor acted with reckless disregard for the truth and, thus, "knowingly for purposes of §727(a)(4). Zimmerman, 320 B.R. 800, 810 (Bankr. M.D.Pa. 2005). Some such factors include whether (1) events for which the petition questions elicited information took place prior to the petition date; (2) omission of numerous assets from a debtor's petition; (3) the existence of wild disparities between the petition and the debtor's testimony at a §341 meeting or other examination; and (4) the debtor's failure to offer an explanation for his or her omissions. Id. at 810 (finding recklessness where there were disparities between debtor's schedules and §341 meeting testimony, several assets were omitted from the debtor's petition, and the debtor failed to explain why the omitted assets were not included in his amended petition). In addition to the aforementioned factors, courts look to circumstantial evidence and draw inferences from a course of conduct. Scimeca v. Umanoff, 169 B.R. 536, 542-43 (D.N.J. 1993). The requisite degree of fraudulent intent is shown "if the debtor engaged in behavior which displayed a reckless cavalier disregard for the truth." Zimmerman, 320 B.R. at 810-111. Reckless can in turn be inferred where there is a "series or pattern of errors or omissions." Spitko, 357 B.R. at 318; see also In re Bielan, 2010 Bankr. LEXIS 1320 (Bankr. D.N.J. April 21, 2010) *citing* The Cadle Co. v. Zofko (In re Zofko), 382 B.R. 45, 48 (Bankr. W.D.Pa. 2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive").

---

[4] As noted by the Court in In re Bielan, Miklos & Makrogiannis, 2010 Bankr. LEXIS 1320 (Bankr. D.N.J. April 21, 2010), "[w]hile the issue of whether a debtor's false oaths were made knowingly and with fraudulent intent are two separate considerations under §727(a)(4)(A), much of the analysis regarding a debtor's knowing false oath applies "with equal validity to the issue of fraudulent intent." Id. citing Dolata v. Dolata (In re Dolata), 306 B.R. 97, 155 (Bankr. W.D.Pa. 2004). Thus, for purposes of the analysis of the third element, the factors will be considered in tandem.

In the present case, it is clear that the Debtor was at least reckless when he made false oaths in his Petition. The Debtor received over $75,000 in proceeds from loans on life insurance proceeds within seven months prior to his bankruptcy filing. Despite having directly received said funds from the Northwestern Mutual Life Insurance policies, the Debtor neither disclosed the funds received as an asset nor scheduled the amount due and owing to Northwestern Mutual Life Insurance (or to his sons pursuant to the Promissory Note dated March 16, 2009) as scheduled debts on his Petition. On June 19, 2009, just one day after the Petition Date, but prior to the date when the Schedules and Statements were submitted for filing (July 8, 2009), the Debtor obtained just over $30,000 in loans from yet another Northwestern Mutual Life Insurance policy. The Debtor did not disclose said loan to his attorney nor did the Debtor attempt to rectify the situation by disclosing any of the above at his §341 meeting. The Debtor also liquidated an annuity valued at almost $40,000 just six days after the Petition Date but prior to the §341 hearing.

Because the Debtor was aware of at least some of these assets and transactions at the time of filing, his declaration that his Petition was accurate can be considered a knowing false oath under §727(a)(4). See Dolata, 306 B.R. at 155 (noting that because the debtor failed to include omitted assets in her amended petition when she had knowledge of the assets, the declaration on her petition constituted a knowing and false oath).

The series of omissions in Debtor's Petition and in his testimony at the §341 hearing evidence his strong reluctance to be forthcoming about his assets and liabilities. The Debtor's asserted reason for not including said transactions, namely his reliance upon his mistaken belief that the insurance policies at issue were not his but were his ex-wife's, is not believable in the face of the clear language of the 2005 Divorce Decree, the policies themselves, and the Debtor's ability to borrow from the policies solely at his request. While this Court believes that the language in the 2005 Divorce Decree is clear, even if the Debtor found such language unclear it was, at the very least, grossly reckless of the Debtor not to bring the transfers and transactions to his attorney's attention prior to the filing of his bankruptcy petition and schedules and statements. It seems more probable, and certainly more believable to the Court, that the Debtor was engaging in conduct geared towards hindering, delaying or defrauding creditors and/or the officer of his Estate. It is interesting to note that once presented with the Motion for Summary

13

Judgment, to which most of the Trustee's evidence in support of his claim was attached, the Debtor suddenly sought dismissal of his bankruptcy case, despite having opposed such dismissal on three previous occasions.

Accordingly, this Court finds that the Debtor acted with a reckless indifference to the truth when he failed to disclose assets and liabilities on his Petition and in his §341 testimony. Because reckless indifference is sufficient to establish the third element under §727(a)(4), namely whether the Debtor acted knowingly and with a fraudulent intent, the final issue is whether the Debtor's statements and/or omissions are material to the bankruptcy case.

The subject matter of a false oath is "material" and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the bankrupt's property. Spitko, 357 B.R. at 312 (citing In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984); Zimmerman, 320 B.R. at 808 ("[t]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions."). Furthermore, it is not for a debtor to determine what is worth being disclosed and what is not, as creditors are "entitled to judge for themselves from a true account of the facts, what will benefit and what will prejudice them." See In re Vielan, at **29; citing ( Legum v. Murray (In re Murray), 249 B.R. 223, 230 (Bankr. E.D.N.Y. 2000)).

In the instant case, it is clear that the subject matter of the Debtor's omissions and false oaths related to both the discovery of assets and the disposition of the Debtor's property. Undoubtedly, creditors of the Debtor have an interest in knowing that the Debtor received substantial sums of money immediately preceding the bankruptcy petition and immediately after, and that he gave his sons and ex-wife Promissory Notes in return. Creditors would also be entitled to learn about the substantial transfers from the Debtor, as sole proprietor for Bonanza, to a company wholly owned by the Debtor in another State. Regardless of the value of the transfers or the impact of the assets and liabilities on creditors, excluding them from the Petition hindered both creditors and the Trustee in investigating and fully understanding the Debtor's financial condition. Thus, the Debtor's omissions and misstatements are material to the course of this bankruptcy proceeding.

III.     **CONCLUSION**

Having found that the elements required for denial of discharge under both §727(a)(2)(A),(B) and 727(a)(4)(A) are met, the Debtor's discharge is hereby denied. The Trustee shall submit an Order in conformance with this Opinion.

                                        BY THE COURT:

                                        GLORIA M. BURNS
                                        United States Bankruptcy Judge

Dated:  February 2, 2012